UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 08 CIV. 1283

JAY HASHMALL and ELEANOR
HASHMALL,

                              Plaintiffs,

v.

WEBSTER BANK, N.A.,

                              Defendant.

**NOTICE OF REMOVAL**

Index No.:

## JUDGE ROBINSON

**PLEASE TAKE NOTICE THAT,** pursuant to 28 U.S.C. §§1441, 1443, and 1446, the action entitled *JAY HASHMALL and ELEANOR HASHMALL v. WEBSTER BANK, N.A.,* commenced in the Supreme Court of the State of New York for the County of Westchester, Index Number 07-25627, is removed by Defendant from the Supreme Court of the State of New York, County of Westchester, to the United States District Court for the Southern District of New York by the filing of this Notice of Removal with the Clerk of the United States District Court for the Southern District of New York.

Defendant, by and through its attorneys, Goldberg Segalla LLP, respectfully state the following as grounds for removing this action:

1.    Defendant removes this action to this Court pursuant to the provisions of 28 U.S.C. §§1441 and 1446.

2.    Defendant has complied with the requirements of Local Rule 81.1 by filing herewith copies of all records and proceedings in the State Court. (See Exhibits A – C attached hereto).

3.    On or about December 18, 2007, Plaintiffs commenced this action against Defendant by filing a summons and verified complaint in the Office of the Clerk of Westchester, copies of which are attached hereto as **Exhibit A**.

4.    On January 17, 2008, Defendant served an answer, a copy of which is attached hereto as **Exhibit B**.

5.    On January 23, 2007, Plaintiffs served an amended verified complaint on Defendant by service upon the undersigned.  A copy of the amended verified complaint is attached hereto as **Exhibit C**.

6.    In their amended verified complaint, Plaintiffs seek, among other things, to recover against Defendant pursuant to 15 U.S.C. §1639.

7.    This Notice of Removal is filed under 28 U.S.C. §1441(b) on the grounds that the amended complaint alleges a civil cause of action over which this Court has original jurisdiction pursuant to 28 U.S.C. §1331 because the claims asserted and the questions raised by the Plaintiffs present federal questions arising under the Constitution, laws or treaties of the United States, including specifically 15 U.S.C. §1639.

8.    Defendant's Notice of Removal is filed within 30 days of receiving, on January 25, 2008, a copy of the amended verified complaint.

9.    A copy of the written notice required by 28 U.S.C. §1446(d), addressed to Plaintiffs as the adverse party and to the Clerk of the Supreme Court, Westchester County, is attached as **Exhibit D**, and will be filed in the Westchester County Clerk's Office and served on counsel for Plaintiffs after the filing of this Notice of Removal in the United States District for the Southern District of New York.

10.    In addition to the claims under 15 U.S.C. §1639, plaintiffs assert numerous claims based on alleged private rights of action under New York State Banking Law, Real Property Law, and common law.

11.    All of the claims arise out of alleged wrongdoing relating to the processing of a loan by Defendant.

**WHEREFORE**, Defendant removes this action, currently docketed in the New York State Supreme Court, Westchester County, Index No. 07-25627, to the United States District Court for the Southern District of New York and requests that the United States District Court for the Southern District of New York assume jurisdiction over the entirety of this action and preclude any further proceedings in the New York State Supreme Court.

Dated:          Buffalo, New York
                February 7, 2008

                                        GOLDBERG SEGALLA LLP


                                        _____
                                        Jeffrey A. Carlino (JC - 5703)
                                        *Attorneys for Defendant*
                                        665 Main Street, Suite 400
                                        Buffalo, New York  14203
                                        Telephone: (716) 566-5400

TO:    Michael S. Bank, Esq.
       BANK, SHEER, SEYMOUR & HASHMALL
       Attorney for Plaintiffs
       399 Knollwood Road, Suite 220
       White Plains, New York 10603
       Telephone: (914) 761-9111


365644.1

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAY HASHMALL and ELEANOR
HASHMALL,

                            Plaintiffs,              **CERTIFICATE OF SERVICE**

v.                                                   Index No.:

WEBSTER BANK, N.A.,

                            Defendant.

Pursuant to the Local rule of Civil Procedure §81(a)(4), the undersigned hereby certifies

that, on February 7, 2008, he caused the foregoing Notice of Removal and attachments filed with

the United States District Court for the Southern District of New York to be served by first-class

mail, postage prepaid, on:

Michael S. Bank, Esq.
BANK, SHEER, SEYMOUR & HASHMALL
399 Knollwood Road, Suite 220
White Plains, New York 10603

GOLDBERG SEGALLA LLP

Jeffrey A. Carlino ( JC- 5703)
*Attorneys for Defendant*
665 Main Street, Suite 400
Buffalo, New York 14203
Telephone: (716) 566-5400

TO:     Michael S. Bank, Esq.
        BANK, SHEER, SEYMOUR & HASHMALL
        Attorney for Plaintiffs
        399 Knollwood Road, Suite 220
        White Plains, New York 10603
        Telephone: (914) 761-9111

365663.1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

Index No. 07- 25627

Date Purchased 12-18-07

----------------------------------------------------------------X

JAY HASHMALL and ELEANOR HASHMALL,

                                Plaintiff,

   -against-

WEBSTER BANK, N.A.,

                                Defendant.

----------------------------------------------------------------X

Plaintiff(s) designate(s)
Westchester
County as the place of trial.

The basis of the venue is
Plaintiffs' Residence

# SUMMONS

Plaintiff(s) reside(s) at
One Wampus Court, Somers, NY
County of Westchester

To the above named Defendant(s)

     You are hereby summoned to answer the Complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this Summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this Summons, exclusive of the day of service (or within 30 days after the service is complete if this Summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: White Plains, New York
       December 3, 2007

BANK, SHEER, SEYMOUR & HASHMALL
*Attorneys for Plaintiffs*
399 Knollwood Road, Suite 220
White Plains, New York 10603
(914) 761-9111

WEBSTER BANK, N.A.
Service and Process

JAN 08 2008

By_____

# RECEIVED

DEC 18 2007

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
------------------------------------------------------------X
JAY HASHMALL and ELEANOR HASHMALL,

                        Plaintiffs,

   -against-

WEBSTER BANK, N.A.,

                        Defendant.
------------------------------------------------------------X

Index No. 07- 25627

**VERIFIED COMPLAINT**

**RECEIVED**

DEC 18 2007

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

     The plaintiffs, JAY HASHMALL and ELEANOR HASHMALL, by their attorneys,

BANK, SHEER, SEYMOUR & HASHMALL, complaining of the defendant, WEBSTER

BANK, N.A., respectfully set forth as follows:

     1.    Plaintiffs, JAY HASHMALL and ELEANOR HASHMALL (hereinafter referred

to as "Plaintiffs"), reside at One Wampus Court, Yorktown Heights, New York, in the Town of

Somers, County of Westchester, State of New York, at all relevant times herein.

     2.    Upon information and belief, defendant, WEBSTER BANK, N.A. (hereinafter

referred to as "WEBSTER"), having an office located at Webster Plaza, 145 Bank Street,

Waterbury, Connecticut  06702, with a branch office in White Plains, New York, as a banking

institution is duly authorized to do business and make mortgage loans organized as a bank under

the U.S. Controller of the Currency, the laws of the State of Connecticut, and authorized to do

business in the State of New York.

     3.    In November, 2006, plaintiffs began a renovation of their residence located at One

Wampus Court, Yorktown Heights, in the Town of Somers, County of Westchester, State of New

York.  In order to pay the cost of the renovation, plaintiff, who attempted to refinance their

mortgage were told by their current mortgagee, ULSTER SAVINGS BANK (hereinafter referred

to as "WEBSTER"), that because the renovation had already commenced and a building permit had been opened in the Town of Somers, County of Westchester, only a construction loan would be available.

4.    Plaintiffs contacted SLEEPY HOLLOW BANK (hereinafter referred to as "SLEEPY HOLLOW"), Sleepy Hollow, New York, and made an application for financing in February of 2007. Plaintiffs were advised by SLEEPY HOLLOW that the terms of the loan would require it to be consolidated with their existing mortgage and home equity loan for a total loan amount of $575,000.00. This included paying off the existing mortgage and home equity loan of approximately $400,000.00, and providing plaintiffs with approximately $175,000.00 of new money to pay for a portion of the refinancing which was estimated to cost $250,000.00.

5.    Several weeks later plaintiffs were advised that their loan commitment had been approved and that the loan would be through WEBSTER. SLEEPY HOLLOW advised plaintiffs that they could not contact or deal directly with WEBSTER and needed to only go through SLEEPY HOLLOW.

6.    The closing of the construction loan was scheduled for March 26, 2007. Plaintiffs attempted to review all documents prior thereto, but were not allowed to do so shortly before the closing. It appeared from plaintiffs' review that the terms of the loan were not appropriate for plaintiffs' renovation in that it was a loan design for new construction and not for renovation of an existing residence in which the homeowner and their family continued to reside. Plaintiff received assurances from SLEEPY HOLLOW that all of plaintiffs' concerns would be handled and to proceed accordingly. Plaintiffs attempted to contact WEBSTER directly, but WEBSTER refused to deal directly with the plaintiffs.

2

7.      The closing occurred at the offices of JOHN MANNING, ESQ., representing WEBSTER on March 26, 2007.  Plaintiffs were not represented by an attorney at the closing.

8.      At the closing on March 26, 2007, although plaintiffs executed most of the dozens of WEBSTER documents, it appeared clear to plaintiffs that the loan was still not structured properly.  WEBSTER had requested plaintiffs to pay money to the bank, rather than the WEBSTER providing them with net proceeds to help pay for the renovation.

9.      The construction loan was structured in such a way that WEBSTER required plaintiffs' general contractor, MANCINI-CIOLO, INC. (hereinafter referred to as "MANCINI"), to sign certain documents too. WEBSTER required plaintiffs to submit "draw requests", and to have an inspection to verify work done before money was to be released over and above the money from that portion of the $575,000.00 that was used to pay off the existing mortgage and home equity loan of approximately $400,000.00.

10.      The offices of JOHN MANNING, ESQ., over the two days following the "closing", partially remedied the misunderstanding by WEBSTER of the type of loan that was necessary, submitted a revised HUD-1 and the defendant, WEBSTER, released the sum of $54,000.00 to plaintiffs towards the renovation costs following submission of a draw request signed by both plaintiffs and their contractor, MANCINI, verifying that $111,000.00 of work had been done between November 2006 through the closing in March of 2007.

11.      In connection with the closing of this construction loan, plaintiffs paid approximately $14,700.00 in closing costs, including a mortgage tax of $6,007.50, and title insurance in the sum of $2,816.00, and a $2,875.00 loan origination fee.

12.      On or about May 15, 2007, plaintiffs submitted a second drawer request to

3

WEBSTER for additional monies in the sum of $30,500.00, which WEBSTER never paid. WEBSTER performed three inspections of the premises following each of the first two drawer requests and a third thereafter.

13.    In May and June of 2007, the plaintiffs found that the general contractor, MANCINI, was grossly negligent in the work they were doing at the house and MANCINI was terminated. The negligence of the general contractor included, but was not limited to improper structural supports. Three steel columns and cross beams were not properly set and welded. The general contractor also failed to install structural supports (LVL beams) for the second floor as required by the architect's filed plans and which was uncovered by the building inspector, as well as among many other items of negligence. These actions by the general contractor placed the premises in an unsafe and hazardous condition which needed to be remedied in accordance with plaintiffs' obligation to defendant, WEBSTER, as well as to plaintiffs' insurer.

14.    Plaintiffs immediately notified WEBSTER by telephone to their "NCLC" National Construction Loan Center, and spoke to the team leader, Jared Gagne. Mr. Gagne advised plaintiffs that they needed to submit certain WEBSTER forms with a letter of explanation which plaintiffs complied with.

15.    Upon information and belief, the terms of the construction loan given to plaintiffs by defendant, WEBSTER, required the renovation to be completed within six months of closing on or before September 17, 2007.

16.    Plaintiffs provided defendant, WEBSTER, with a letter of explanation and requested that the six (6) month period be extended for two (2) months and that WEBSTER approve the removal of the general contractor, MANCINI, with the plaintiffs completing the

4

project themselves.

17.    Defendant, WEBSTER, denied plaintiffs' request for a two (2) month extension and replacement of the general contractor although granted them a one month extension. Plaintiffs advised defendant, WEBSTER, that the extension was irrelevant unless accompanied by approval of the removal of the negligent contractor.

18.    Defendant, WEBSTER, refused to provide plaintiffs with any further funds to complete the renovations, putting plaintiffs in a "Catch 22" situation in that WEBSTER required the construction project to be completed by a certain date, but would not provide the additional monies in accordance with the construction loan to do so. Following the initial drawer of $54,000.00, no further monies were ever loaned to plaintiffs. Further, the WEBSTER documents were internally inconsistent since they required plaintiffs to maintain the premises properly but did not provide them with a mechanism to do so.

19.    Defendant, WEBSTER, required plaintiffs to obtain an affidavit signed by the terminated contractor, MANCINI, on their WEBSTER forms (Form D-10) which MANCINI-CIOLO refused to sign.

20.    Plaintiffs advised defendant, WEBSTER, that they could not provide the form as requested because MANCINI-CIOLO was terminated for cause and refused to cooperate and that plaintiffs could not complete the project within the six month time-frame on or before September 17, 2007, because defendant, WEBSTER, refused to pay the second drawer request or advance any further monies to them, or approve the removal of the negligent contractor.

21.    Defendant, WEBSTER, at first approved a one month extension, but continued in bad faith to refuse to advance further monies to plaintiffs, and refused to recognize the fact that

plaintiffs had terminated MANCINI for cause which prevented plaintiffs from bringing on a second contractor or to complete the renovation themselves.

22.    To overcome this "Catch 22" situation created by WEBSTER's making, plaintiffs were compelled to seek out new financing and contacted HUDSON VALLEY BANK (hereinafter referred to as "HUDSON").   HUDSON agreed to take over the entire $575,000.00 construction loan with a conventional mortgage.

23.    Upon information and belief, defendant, WEBSTER, held plaintiffs in default of the terms of their construction loan by reason of the termination of the contractor and for failure to complete the project by September 17, 2007, notwithstanding the fact that defendant, WEBSTER did not provide the funds needed to complete the renovation project, and that the termination of the general contractor was necessary and in fulfillment of plaintiffs' additional obligation to WEBSTER under the terms of the financing.

24.    Plaintiffs arranged a closing with HUDSON, and requested that defendant, WEBSTER, assign to HUDSON the mortgage dated March 26, 2007 for which the plaintiffs already paid a mortgage tax of $6,007.35, although only $470,000.00 was loaned.

25.    Plaintiffs made each and every monthly payment from March 26, 2007 through September 2007, as requested by defendant, WEBSTER, and were never in default in payment.

26.    Defendant, WEBSTER, refused to provide the assignment to HUDSON as requested and provided a payoff letter to HUDSON insisting on an $11,500.00 "prepayment penalty" to be assessed against plaintiffs.  Plaintiffs and HUDSON adjourned the closing date so that plaintiffs could demonstrate to defendant, WEBSTER, that both the second payment of a mortgage tax for the same current mortgage was acting in bad faith and unconscionable, as was

6

the $11,500.00 "prepayment penalty" based upon the circumstances set forth above.

27.     Thereafter, and notwithstanding the actions set forth above, plaintiffs managed to substantially complete the renovation project and obtained a Certificate of Occupancy from the Building Department of the Town of Somers on or about October 12, 2007, and closed on a mortgage, refinancing the construction loan through HUDSON on or about October 20, 2007. At the closing with HUDSON, plaintiffs were compelled to pay both the mortgage tax for a second time and the $11,500.00 "prepayment penalty" to WEBSTER on the threat of foreclosure.

### AS AND FOR A FIRST CAUSE OF ACTION

28.     Plaintiffs repeat and reallege paragraphs 1 through 23 with the same force and effect as if fully set forth hereat.

29.     Defendant, WEBSTER, in equity should not be allowed to force plaintiffs to pay a second mortgage tax on the exact same current mortgage of $575,000.00, and should have provided HUDSON with an assignment thereof in accordance with Section 275 of the Real Property Law of the State of New York, and in accordance with the reasoning of *Goldstein v. Soledad Place Corp.*, 157 M2d 801, 599 NYS2d 213 (NY Co. 1993) upon defendant, WEBSTER's notice of "default" and threat of foreclosure.

30.     By reason of the above, plaintiffs were damaged in the sum of $6,007.35.

### AS AND FOR A SECOND CAUSE OF ACTION

31.     Plaintiffs repeat and reallege paragraphs 1 through 30 with the same force and effect as if fully set forth hereat.

32.     Plaintiffs were required to pay a "prepayment penalty" in the sum of $11,500.00, in order to prevent defendant WEBSTER from foreclosing on their home, notwithstanding that

7

all monthly payments were paid in full and plaintiffs were current in all payments.

33.    Upon information and belief, any default which occurred by plaintiffs, occurred by reason of defendant, WEBSTER not providing draw money for the plaintiffs to timely complete the project and not providing a mechanism to allow plaintiffs to change their contractor in the midst of their project after having a valid and just reason for terminating same.

34.    The prepayment penalty in the sum of $11,500.00 paid by plaintiffs at the closing of the refinance loan from HUDSON, was an unconscionable penalty that was caused in whole or in part by defendant, WEBSTER's own bad faith actions.

35.    Plaintiffs should be entitled to be reimbursed the sum of $11,500.00 paid to defendant, WEBSTER, together with appropriate interest.

## AS AND FOR A THIRD CAUSE OF ACTION

36.    Plaintiffs repeat and reallege paragraphs 1 through 35 with the same force and effect as if fully set forth hereat.

37.    Upon information and belief, defendant, WEBSTER, wanted to end the financing given to plaintiffs and acted deliberately, wrongfully and in bad faith by not providing plaintiffs with funds to complete their renovation, by not approving a reasonable two month extension and by not approving removal of the negligent contractor which would have allowed plaintiffs to either hire a new contractor or complete the project themselves.

38.    By reason of the facts and circumstances set forth above, defendant, WEBSTER, has engaged in predatory lending practices, unfair trade practices, bad faith misconduct in not approving on extension of time and removal of a contractor and compelled the plaintiffs to pay $12,000.00 in mortgage tax, $11,500.00 in prepayment penalty, and $28,000.00 in closing costs

8

for two closings, for a total of $49,000.00 in costs and penalties together with approximately $24,000.00 in interest payments when defendant, WEBSTER, only provided plaintiffs with $54,000.00 in new money.

39.     Based upon the foregoing, defendant, WEBSTER's banking and consumer practices should be held to be unconscionable and in bad faith and plaintiffs awarded appropriate compensatory damages as well as punitive damages as permitted by law and statute, including but not limited to Section 598 of the Banking Law.

WHEREFORE, plaintiffs pray for judgment as defendant, as follows:

a)      On the First Cause of Action in the sum of $6,007.35, as and for mortgage interest improperly paid with interest accrued and accruing; and

b)      On the Second Cause of Action a judgment in the sum of $11,500.00 for improperly collected prepayment penalty with interest accrued and accruing; and

c)      On the Third Cause of Action compensatory damages in the sum of $49,000.00 and punitive damages in the sum of $150,000.00 with interest accrued and accruing; and

d)      For such other and further relief that this Court may seem just, fair and equitable, together with appropriate interest, costs and disbursements.

Dated: White Plains, New York
       December 3, 2007

BANK, SHEER, SEYMOUR & HASHMALL

By: _____
        Michael S. Bank
        *Attorneys for Plaintiffs*
        399 Knollwood Road, Suite 220
        White Plains, New York  10603
        (914) 761-9111

9

# VERIFICATION

STATE OF NEW YORK            )
                             ) ss.:
COUNTY OF WESTCHESTER        )


JAY B. HASHMALL, being duly sworn, deposes and says:

That deponent is the Plaintiff named in the within action;  that he has read the foregoing

Complaint, and knows the contents thereof, and that the same is true to deponent's own

knowledge, except as to the matters therein stated to be alleged upon information and belief, and

as to those matters he believes is to be true.

Jay B Hashwall
JAY B. HASHMALL

Sworn to before me this
18th day of December, 2007


Barbara G. Hubbell
Notary Public

BARBARA G. HUBBELL
Notary Public, State of New York
No. 4603175
Qualified in Westchester County
Commission Expires July 7, 2010

10

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

---

JAY HASHMALL and ELEANOR HASHMALL,

                    Plaintiffs,

v.                                          **VERIFIED ANSWER**

WEBSTER BANK, N.A.,                  Index No.: 07-25627

                    Defendant.

---

       Defendant, WEBSTER BANK, N.A., (hereinafter "Webster") by and through its attorneys, Goldberg Segalla LLP, for its Verified Answer to Plaintiffs' Complaint, state as follows:

       1.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 1 of Plaintiffs' Complaint.

       2.     Defendant admits the allegations contained in paragraph 2 of Plaintiffs' Complaint.

       3.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 3 of Plaintiffs' Complaint.

       4.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 4 of Plaintiffs' Complaint.

       5.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 5 of Plaintiffs' Complaint.

       6.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 6 of Plaintiffs' Complaint.

7.      Defendant lacks knowledge or information sufficient to form a belief as to the allegations in paragraph 7 of Plaintiffs' Complaint.

8.      Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 8 of Plaintiffs' Complaint.

9.      Defendant admits the allegations contained in paragraph 9 of Plaintiffs' Complaint.

10.     Defendant admits that funds were disbursed by Defendant to or for the benefit of Plaintiffs and lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 10 of Plaintiffs' Complaint.

11.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 11 of Plaintiffs' Complaint.

12.     Defendant admits that additional funds were not paid to Plaintiffs, admits that an inspection of Plaintiffs' property were performed, and lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 12 of Plaintiffs' Complaint.

13.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 13 of Plaintiffs' Complaint.

14.     Defendant admits that contact was made with Defendant and that Defendant required Plaintiffs to complete and submit certain documents; denies that Plaintiffs complied with Defendant's requirements, and denies the remaining allegations contained in paragraph 14 of Plaintiffs' Complaint.

15.     Defendant admits that Plaintiffs were contractually obligated to complete construction renovations on or before September 17, 2007, and denies the remainder of the allegations contained in paragraph 15 of Plaintiffs' Complaint.

16.     Defendant admits that Plaintiffs requested an extension of their construction completion deadline, and lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 16 of Plaintiffs' Complaint.

17.     Defendant admits that a one (1) month extension was to be granted upon Plaintiffs' satisfaction of certain conditions precedent, denies that Plaintiffs' ever satisfied such conditions, and denies the remaining allegations contained in paragraph 17 of Plaintiffs' Complaint.

18.     Defendant admits that Defendant advanced money towards construction renovations, and denies the remainder of the allegations contained in paragraph 18 of Plaintiffs' Complaint.

19.     Defendant admits that Defendant sought an Affidavit signed by Plaintiffs' contractor, and lacks knowledge or information sufficient to form a belief as the remaining allegations contained in paragraph 19 of Plaintiffs' Complaint.

20.     Defendant denies the allegations contained in paragraph 20 of Plaintiffs' Complaint.

21.     Defendant denies any bad-faith by Defendant, denies that any act or omission by Defendant prevented Plaintiffs from fulfilling their contractual obligations, and lacks knowledge or information sufficient to form a belief as to the remainder of the allegations contained in paragraph 21 of Plaintiffs' Complaint.

3

22.    Defendant lacks knowledge or information sufficient to form a belief as to any agreements reached between Plaintiffs and Hudson Valley Bank, and denies the remainder of the allegations contained in paragraph 22 of Plaintiffs' Complaint.

23.    Defendant admits that Plaintiffs were in default of the terms of their construction loan for failure to complete their construction project by September 17, 2007, and denies the remainder of the allegations contained in paragraph 23 of Plaintiffs' Complaint.

24.    Defendant admits that Plaintiffs requested that Defendant assign its mortgage dated March 26, 2007 to Hudson, and lacks knowledge or information sufficient to form a belief as to the remainder of the allegations contained in paragraph 24 of Plaintiffs' Complaint.

25.    Defendant admits that some monthly payments were made, and denies the remainder of the allegations contained in paragraph 25 of Plaintiffs' Complaint.

26.    Defendant denies that the Defendant refused provide an assignment to Hudson, admits that a payoff letter was submitted requiring an $11,500.00 pre-payment fee as was allowed by Plaintiffs' contract with Defendant, denies any unconscionable behavior by Defendant, and lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 26 of Plaintiffs' Complaint.

27.    Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 27 of Plaintiffs' Complaint.

28.    In response to the allegations in paragraph 28 of Plaintiffs' Complaint, Defendant repeats and realleges each and every earlier response as if more fully set forth herein.

4

29.    Defendant denies the allegations contained in paragraph 29 of Plaintiffs' Complaint.

30.    Defendant denies the allegations contained in paragraph 30 of Plaintiffs' Complaint.

31.    In response to the allegations in paragraph 31 of Plaintiffs' Complaint, Defendant repeats and realleges each and every earlier response as if more fully set forth herein.

32.    Defendant admits that a pre-payment fee was sought in a manner consistent with Plaintiffs' contractual obligations, and denies the remaining allegations contained in paragraph 32 of Plaintiffs' Complaint.

33.    Defendant denies the allegations contained in paragraph 33 of Plaintiffs' Complaint.

34.    Defendant denies the allegations contained in paragraph 34 of Plaintiffs' Complaint.

35.    Defendant denies the allegations contained in paragraph 35 of Plaintiffs' Complaint.

36.    In response to the allegations in paragraph 36 of Plaintiffs' Complaint, Defendant repeats and realleges each and every earlier response as if more fully set forth herein.

37.    Defendant denies the allegations contained in paragraph 37 of Plaintiffs' Complaint.

38.    Defendant denies the allegations contained in paragraph 38 of Plaintiffs' Complaint.

39.    Defendant denies the allegations contained in paragraph 39 of Plaintiffs' Complaint.

40.    Defendant denies each and every other allegation contained in Plaintiffs' Complaint that was not specifically admitted.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

41.    Plaintiffs have breached their contractual agreement with Defendant by failing to give the contractually required pre-suit notice.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

42.    Plaintiffs have unclean hands and must be barred from any equitable recovery.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

43.    Defendant has, at all times, acted in accordance with the contractual agreements between the parties.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

44.    Plaintiffs agreed to be "solely responsible for the progress and quality of construction" and their failure to complete construction by the completion deadline, for whatever reason and for any related expense occasioned thereby, affords no recourse against Defendant.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

45.    Plaintiffs' Complaint fails to state a cause of action upon which relief can be granted.

6

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

46.    A valid and enforceable contract exists between the parties, governs their respective rights and responsibilities, and precludes the granting of any equitable relief.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

47.    One or more Plaintiffs lack standing.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

48.    Plaintiffs lack any basis to recover punitive damages.

## AS AND FOR A NINETH AFFIRMATIVE DEFNSE

49.    Plaintiffs lack a viable private cause of action under Section 598 of the Banking Law.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

50.    Defendant lacks any obligation—whether contractual or statutory—to assign Plaintiffs' mortgage.

## AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

51.    Service of process was defective and the Court lacks personal jurisdiction on Defendant.

## AS AN FOR A TWELFTH AFFIRMATIVE DEFENSE

52.    Plaintiffs have no basis in law or fact to support any of their claims against Defendant in this action, and Defendant has apparently been named as a defendant solely to harass or maliciously injure it.

53.    Plaintiffs having commenced this action against Defendant with no basis in law or fact, are subject to the terms and consequences of CPLR §8303-a, and Part 130 of the Rules of the Chief Administrator (22 N.Y.C.R.R.) Part 130).

54.    Plaintiffs' commencement and continuation of this action against Defendant is frivolous and entitles Defendant to recover costs and attorneys' fees incurred in its defense, as allowed by CPLR §8303-a, and Part 130 of the Rules of the Chief Administrator (22 N.Y.C.R.R. Part 130).

Dated: January 17, 2008

GOLDBERG SEGALLA, LLP

Jeffrey A. Carlino
Attorneys for Defendant
665 Main Street, Suite 400
Buffalo, New York 14203
(716) 566-5405

TO:    Michael S. Bank, Esq.
       Bank, Sheer, Seymour & Hashmall
       Attorney for Plaintiffs
       399 Knollwood Road, Suite 220
       White Plains, New York 10603

362093.1

8

## ATTORNEY VERIFICATION

STATE OF NEW YORK)
COUNTY OF ERIE        ) ss:
CITY OF BUFFALO     )

Jeffrey A. Carlino, being duly sworn, duly deposes and says:

1. I am a member of the law firm of Goldberg Segalla LLP, attorneys for Defendant,

Webster Bank, N.A., in the above captioned matter.

2. I have read the foregoing Verified Answer and know the contents thereof to be

true, except as to the matters stated to be alleged upon information and belief, and as to

those matters, I believe them to be true based upon the investigative materials supplied by

Defendant.

3. The reason this verification is made by deponent and not by a representative of the

Defendant, is that none of its officers or representatives reside at or in the County of Erie

where our law office is located.

_____
Jeffrey A. Carlino

Sworn to before me on this
17th day of January, 2008.

_____
Notary Public

AUDREY C. KENT
Notary Public State of New York
Qualified in Erie County
My Commission Expires May 31, 2011.

9

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

---

JAY HASHMALL and ELEANOR HASHMALL,

                    Plaintiffs,

v.                                                      **AFFIDAVIT OF SERVICE**

WEBSTER BANK, N.A.,                                     Index No.: 07-25627

                    Defendant.

---

     Susan A. Sinclair, being duly sworn, deposes and says, that deponent is not a party to this action, is over 18 years of age and resides in Amherst, New York; that on the 17th day of January, 2008, deponent served the following *Verified Answer* and *Deposition Notice*, upon:

Michael S. Bank, Esq.
Bank, Sheer, Seymour & Hashmall
399 Knollwood Road, Suite 220
White Plains, New York 10603

at the address designated by said attorney(s) for that purpose by depositing a true copy of same enclosed in a post-paid, properly addressed wrapper, in a post-office/official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

                                                        *Susan A. Sinclair*
                                                        Susan A. Sinclair

Sworn to before me on this
17th day of January, 2008.

*Audrey C. Kent*
Notary Public

362202.1    AUDREY C. KENT
            Notary Public State of New York
            Qualified in Erie County
            My Commission Expires May 31, 2011.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
--------------------------------------------------------------X
JAY HASHMALL and ELEANOR HASHMALL,                          Index No.  07-25627

                             Plaintiffs,          **AMENDED**
                                            **VERIFIED COMPLAINT**

    -against-

WEBSTER BANK, N.A.,

                           Defendant.
--------------------------------------------------------------X

      The plaintiffs, JAY HASHMALL and ELEANOR HASHMALL, by their attorneys,

BANK, SHEER, SEYMOUR & HASHMALL, complaining of the defendant, WEBSTER

BANK, N.A., respectfully set forth as follows:

      1.     Plaintiffs, JAY HASHMALL and ELEANOR HASHMALL (hereinafter referred

to as "Plaintiffs"), reside at One Wampus Court, Yorktown Heights, New York, in the Town of

Somers, County of Westchester, State of New York, at all relevant times herein.

      2.     Upon information and belief, defendant, WEBSTER BANK, N.A. (hereinafter

referred to as "WEBSTER"), having an office located at Webster Plaza, 145 Bank Street,

Waterbury, Connecticut  06702, with a branch office in White Plains, New York, is a banking

institution duly authorized to do business and make mortgage loans organized as a bank under

the U.S. Controller of the Currency, the laws of the State of Connecticut, and authorized to do

business in the State of New York.

      3.     In November, 2006, plaintiffs began a renovation of their residence located at One

Wampus Court, Yorktown Heights, in the Town of Somers, County of Westchester, State of New

York.  In order to pay the cost of the renovation, plaintiffs, who attempted to refinance their

mortgage were told by their current mortgagee, ULSTER SAVINGS BANK (hereinafter referred

to as "ULSTER"), that because the renovation had already commenced and a building permit had

been opened in the Town of Somers, County of Westchester, only a construction loan would be available.

4.      Plaintiffs contacted SLEEPY HOLLOW BANK (hereinafter referred to as "SLEEPY HOLLOW"), Sleepy Hollow, New York, and made an application for financing in February of 2007. Plaintiffs were advised by SLEEPY HOLLOW that the terms of the loan would require it to be consolidated with their existing mortgage and home equity loan for a total loan amount of $575,000.00. This included paying off the existing mortgage and home equity loan of approximately $400,000.00, and providing plaintiffs with approximately $175,000.00 of new money to pay for a portion of the refinancing which was estimated to cost $250,000.00.

5.      Several weeks later plaintiffs were advised that their loan commitment had been approved and that the loan would be through WEBSTER. SLEEPY HOLLOW advised plaintiffs that they could not contact or deal directly with WEBSTER and needed to only go through SLEEPY HOLLOW, as agent.

6.      The closing of the construction loan was scheduled for March 26, 2007. Plaintiffs attempted to review all documents prior thereto, but were not allowed to do so until shortly before the closing. It appeared from plaintiffs' review that the terms of the loan were not appropriate for plaintiffs' renovation in that it was a loan design for new construction and not for renovation of an existing residence in which the homeowner and their family continued to reside. Plaintiffs received assurances from SLEEPY HOLLOW that all of plaintiffs' concerns would be handled and to proceed accordingly. Plaintiffs attempted to contact WEBSTER directly, but WEBSTER refused to deal directly with the plaintiffs.

7.      The closing occurred at the offices of JOHN MANNING, ESQ., representing WEBSTER on March 26, 2007. Plaintiffs were not represented by an attorney at the closing.

2

8.    At the closing on March 26, 2007, although plaintiffs executed most of the dozens of WEBSTER documents, it appeared clear to plaintiffs that the loan was still not structured properly. WEBSTER had requested plaintiffs to pay money to WEBSTER, rather than the WEBSTER providing plaintiffs with net proceeds to help pay for the renovation. By March 26, 2007, plaintiffs had already completed $111,000.00 worth of work on their house.

9.    The construction loan was structured in such a way that WEBSTER required plaintiffs' general contractor, MANCINI-CIOLO, INC. (hereinafter referred to as "MANCINI"), to sign certain documents too. WEBSTER required plaintiffs to submit "draw requests", and to have an inspection to verify work done before money was to be released over and above the money from that portion of the $575,000.00 that was used to pay off the existing mortgage and home equity loan of approximately $400,000.00.

10.    During the two days following the March 26, 2007 "closing", WEBSTER's attorneys partially remedied the misunderstanding and prepared a revised HUD-1. The defendant, WEBSTER, released the sum of $54,000.00 to plaintiffs. This amount was still less than one-half of the renovation costs set forth on the previously submitted initial draw request of $111,000.00. Upon information and belief, WEBSTER Bank had verified that $111,000.00 worth of work was done between November 2006 and the closing in March of 2007.

11.    In connection with the closing of this construction loan, plaintiffs paid approximately $14,700.00 in closing costs, including a mortgage tax of $6,007.50, and title insurance in the sum of $2,816.00, and a $2,875.00 loan origination fee.

12.    On or about May 15, 2007, plaintiffs submitted a second draw request to WEBSTER for additional monies in the sum of $30,500.00, which WEBSTER never paid. Upon information and belief, WEBSTER performed three inspections of the premises following the

3

closing and verified that substantial progress in the renovation had been made.

13.     In May and June of 2007, the plaintiffs found that the general contractor, MANCINI, was grossly negligent in the work they were doing at the house and MANCINI was terminated. The negligence of the general contractor included, but was not limited to improper structural supports. Three steel columns and cross beams were not properly set and welded. The general contractor also failed to install structural supports (LVL beams) for the second floor as required by the architect's filed plans and which was uncovered by the building inspector, as well as many other items of negligence. These actions by the general contractor placed the premises in an unsafe and hazardous condition which needed to be remedied in accordance with plaintiffs' obligation to defendant, WEBSTER, as well as to plaintiffs' insurer.

14.     Plaintiffs immediately notified WEBSTER by telephone to their "NCLC" National Construction Loan Center, and spoke to the team leader, Jared Gagne. Mr. Gagne advised plaintiffs that they needed to submit certain WEBSTER forms with a letter of explanation which plaintiffs complied with.

15.     Upon information and belief, the terms of the construction loan given to plaintiffs by defendant, WEBSTER, required the renovation to be completed within six months of closing on or before September 17, 2007.

16.     Plaintiffs provided defendant, WEBSTER, with a letter of explanation and requested that the six (6) month period be extended for two (2) months and that WEBSTER approve the removal of the general contractor, MANCINI, with the plaintiffs completing the project themselves.

17.     Defendant, WEBSTER, denied plaintiffs' request for a two (2) month extension and replacement of the general contractor although granted them a one month extension.

4

Plaintiffs advised defendant, WEBSTER, that the extension was irrelevant unless accompanied by approval of the removal of the negligent contractor and the advance of further funds of the remaining $100,000.00 borrowed. Of the $575,000.00 "borrowed" by plaintiffs and upon which defendant, WEBSTER, filed a mortgage and collected fees and taxes, only $470,000.00 had actually been released.

18.    Defendant, WEBSTER, refused to provide plaintiffs with any further funds to complete the renovations, putting plaintiffs in a "Catch 22" situation in that WEBSTER required the construction project to be completed by a certain date, but would not provide the additional monies in accordance with the construction loan to do so. Following the initial draw of $54,000.00, no further monies were ever loaned to plaintiffs. WEBSTER withheld the remaining $105,000.00 and refused to release it notwithstanding their inspection showed significant additional work had been done. Further, the WEBSTER documents were internally inconsistent since they required plaintiffs to maintain the premises properly but did not provide them with a mechanism to do so, and indeed, refused to deal fairly and in good faith with the situation.

19.    Defendant, WEBSTER, required plaintiffs to obtain an affidavit signed by the terminated contractor, MANCINI, on their WEBSTER forms (Form D-10) which MANCINI-CIOLO refused to sign.

20.    Plaintiffs advised defendant, WEBSTER, that they could not provide the form as requested because MANCINI-CIOLO was terminated for cause and refused to cooperate and that plaintiffs could not complete the project within the six month time-frame on or before September 17, 2007, because defendant, WEBSTER, refused to pay the second draw request or advance any further monies to them, or approve the removal of the negligent contractor.

21.    Defendant, WEBSTER, at first approved a one month extension, but continued in

5

bad faith to refuse to advance further monies to plaintiffs, and refused to recognize the fact that

plaintiffs had terminated MANCINI for cause which prevented plaintiffs from bringing on a

second contractor or to complete the renovation themselves.

22.    To overcome this "Catch 22" situation created by WEBSTER's refusal to deal

fairly with the situation and in good faith resolve the dilemma, plaintiffs were compelled to seek

out new financing and contacted HUDSON VALLEY BANK (hereinafter referred to as

"HUDSON"). HUDSON agreed to take over the entire $575,000.00 construction loan with a

conventional mortgage.

23.    Upon information and belief, defendant, WEBSTER, held plaintiffs in default of

the terms of their construction loan by reason of the termination of the contractor and for failure

to complete the project by September 17, 2007, notwithstanding the fact that defendant,

WEBSTER did not provide the funds needed to complete the renovation project, and that the

termination of the general contractor was necessary and in fulfillment of plaintiffs' additional

obligations to WEBSTER under the terms of the financing.

24.    Plaintiffs arranged a closing with HUDSON, and requested that defendant,

WEBSTER, assign to HUDSON the mortgage dated March 26, 2007 for which the plaintiffs

already paid a mortgage tax of $6,007.35, although only $470,000.00 was loaned.

25.    Plaintiffs made each and every monthly payment from March 26, 2007 through

September 2007, as requested by defendant, WEBSTER, and were never in default in payment.

26.    Defendant, WEBSTER, refused to provide the assignment to HUDSON as

requested and provided a payoff letter to HUDSON insisting on an $11,500.00 "prepayment

penalty" to be assessed against plaintiffs. Plaintiffs and HUDSON adjourned the closing date so

that plaintiffs could demonstrate to defendant, WEBSTER, that both the second payment of a

6

mortgage tax for the same current mortgage was acting in bad faith and unconscionable, as was the $11,500.00 "prepayment penalty" based upon the circumstances set forth above in that it was an involuntary and necessary refinancing.

27.    Thereafter, and notwithstanding the actions set forth above, plaintiffs managed to substantially complete the renovation project and obtained a Certificate of Occupancy from the Building Department of the Town of Somers on or about October 12, 2007, and closed on a mortgage, refinancing the construction loan through HUDSON on or about October 20, 2007. At the closing with HUDSON, plaintiffs were compelled to pay both the mortgage tax for a second time and the $11,500.00 "prepayment penalty" to WEBSTER on the threat of foreclosure.

## AS AND FOR A FIRST CAUSE OF ACTION

28.    Plaintiffs repeat and reallege paragraphs 1 through 23 with the same force and effect as if fully set forth hereat.

29.    Defendant, WEBSTER, in equity should not be allowed to force plaintiffs to pay a second mortgage tax on the exact same current mortgage of $575,000.00, and should have provided HUDSON with an assignment thereof in accordance with Section 275 of the Real Property Law of the State of New York, and in accordance with the reasoning of *Goldstein v. Soledad Place Corp.*, 157 M2d 801, 599 NYS2d 213 (NY Co. 1993) upon defendant, WEBSTER's notice of "default" and threat of foreclosure.

30.    By reason of the above, plaintiffs were damaged in the sum of $6,007.35.

## AS AND FOR A SECOND CAUSE OF ACTION

31.    Plaintiffs repeat and reallege paragraphs 1 through 30 with the same force and effect as if fully set forth hereat.

32.    Plaintiffs were required to pay a "prepayment penalty" in the sum of $11,500.00,

7

in order to prevent defendant WEBSTER from foreclosing on their home, notwithstanding that all monthly payments were paid in full and plaintiffs were current in all payments.

33.    Upon information and belief, any default which occurred by plaintiffs, occurred by reason of defendant, WEBSTER not acting in good faith, not dealing fairly with the circumstances, not providing draw money for the plaintiffs to timely complete the project and not providing a mechanism to allow plaintiffs to change their contractor in the midst of their project after having a valid and just reason for terminating same.

34.    The prepayment penalty in the sum of $11,500.00 paid by plaintiffs at the closing of the refinance loan from HUDSON, was an unconscionable penalty that was caused in whole or in part by defendant, WEBSTER's own bad faith actions.

35.    Plaintiffs should be entitled to be reimbursed the sum of $11,500.00 paid to defendant, WEBSTER, together with appropriate interest.

## AS AND FOR A THIRD CAUSE OF ACTION

36.    Plaintiffs repeat and reallege paragraphs 1 through 35 with the same force and effect as if fully set forth hereat.

37.    Upon information and belief, defendant, WEBSTER, wanted to end the financing given to plaintiffs and acted deliberately, wrongfully and in bad faith by not providing plaintiffs with funds to complete their renovation, by not approving a reasonable two month extension and by not approving removal of the negligent contractor which would have allowed plaintiffs to either hire a new contractor or complete the project themselves.

38.    Upon information and belief, defendant WEBSTER's actions and inactions as set forth above, although not expressly forbidden in the written contract, acted to deprive the plaintiffs of their right to receive the benefits provided by the Agreement between the parties,

8

namely money to complete their renovation project.

39.     By reason of the facts and circumstances set forth above, defendant, WEBSTER,

breached their implied covenant of good faith and fair dealing with plaintiffs, and has engaged in

predatory lending practices, unfair trade practices, bad faith misconduct in not approving on

extension of time and removal of a contractor and compelled the plaintiffs to pay $12,000.00 in

mortgage tax, $11,500.00 in prepayment penalty, and $28,000.00 in closing costs for two

closings, for a total of $49,000.00 in costs and penalties together with approximately $24,000.00

in interest payments when defendant, WEBSTER, only provided plaintiffs with $54,000.00 in

new money.

40.     Based upon the foregoing, defendant, WEBSTER's banking and consumer

practices should be held to be unconscionable and a breach of its implied covenant of good faith

and fair dealing, and plaintiffs awarded appropriate compensatory damages as well as punitive

damages as permitted by law and statute, including but not limited to Section 598 of the Banking

Law.

## AS AND FOR A FOURTH CAUSE OF ACTION

41.     Plaintiffs repeat and reallege paragraphs 1 through 40 with the same force and

effect as if fully set forth hereat.

42.     Upon information and belief, the actions and conduct of defendant, WEBSTER,

were in violation of the HOME OWNERSHIP and PROTECTION ACT of 1994 (15 USC

§1639, etc.), which was enacted by Congress to provide some relief to consumers in plaintiffs'

position against predatory lending practices. Said Act prohibits the collection of additional

interest and penalties, including prepayment penalties, upon the default or other involuntary

acceleration of the loan.

WHEREFORE, plaintiffs pray for judgment as defendant, as follows:

9

a)    On the First Cause of Action in the sum of $6,007.35, as and for mortgage interest improperly paid with interest accrued and accruing; and

b)    On the Second Cause of Action a judgment in the sum of $11,500.00 for improperly collected prepayment penalty with interest accrued and accruing; and

c)    On the Third Cause of Action compensatory damages in the sum of $49,000.00 and punitive damages in the sum of $150,000.00 with interest accrued and accruing; and

d)    On the Fourth Cause of Action compensatory damages as provided by statute 15 USC § 1639 *et. seq.* in an amount to be determined by the Court, but including the $11,500.00 prepayment penalty paid; and

e)    For such other and further relief that this Court may seem just, fair and equitable, together with appropriate interest, costs and disbursements.

Dated: White Plains, New York
        January 23, 2008

BANK, SHEER, SEYMOUR & HASHMALL

By: _____
        Michael S. Bank
*Attorneys for Plaintiffs*
399 Knollwood Road, Suite 220
White Plains, New York   10603
(914) 761-9111

10

# VERIFICATION

STATE OF NEW YORK        )
                                   ) ss.:

COUNTY OF WESTCHESTER   )

      JAY B. HASHMALL, being duly sworn, deposes and says:

      That deponent is the Plaintiff named in the within action; that he has read the foregoing

Amended Complaint, and knows the contents thereof, and that the same is true to deponent's own

knowledge, except as to the matters therein stated to be alleged upon information and belief, and

as to those matters he believes is to be true.

                               _____

                               JAY B. HASHMALL

Sworn to before me this
23rd day of January, 2008

_____
Notary Public

         MICHAEL STEPHAN BANK
       Notary Public, State of New York
           No. 02BA0150125
      Qualified in Westchester County
    Commission Expires June 30, 20 11

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

_____

JAY HASHMALL and ELEANOR
HASHMALL,

                       Plaintiffs,      **NOTICE OF FILING OF NOTICE OF
REMOVAL**

v.

                                   Index No.: 07-25627

WEBSTER BANK, N.A.,

                       Defendant.

_____

TO:    Michael S. Bank, Esq.
       BANK, SHEER, SEYMOUR & HASHMALL
       Attorney for Plaintiffs
       399 Knollwood Road, Suite 220
       White Plains, New York 10603

       Clerk of the Court
       Supreme Court of the State of New York
       County of Westchester
       110 Martin Luther King Jr., Blvd., Room 330
       White Plains, New York 10601

     **PLEASE TAKE NOTICE THAT,** a true copy of the Notice of Removal filed in the

Office of the Clerk of the United States District Court for the Southern District of New York on

February 8, 2008 is attached as **Exhibit A.**

Dated: Buffalo, New York
       February 7, 2008

                              GOLDBERG SEGALLA LLP

                             _____
                             Jeffrey A. Carlino
                             *Attorney for Defendant*
                             665 Main Street, Suite 400
                             Buffalo, New York  14203
                             Telephone: (716) 566- 5405